James McKinney suffered repeated beatings. At the age of 12, he ran away from Oklahoma because of the beatings to be with a family member in Arizona. He would go to school with feces on his clothes. Sometimes he couldn't go to school because he didn't have shoes. When he was caught stealing someone's lunch, his father said, I'm going to punish you not for stealing someone's lunch, but because you got caught. In this particular case, there was a dart of physical evidence tying Mr. McKinney to the murder. There was no bullets, no DNA, no blood samples, no hair, no fingerprints. Primarily, my client was convicted on the testimony of Mr. Morris and Mr. Lemon. It didn't harm the prosecution to have a confession by Mr. McKinney Jr. to Mr. McKinney Sr. It actually hurt him to have that, Your Honor. It hurt him because his father went to the jail and testified at trial that there wasn't a confession, but then they played tapes that were audible, and then they put a transcript in of the tape recording, which the father denied having a confession. So in terms of sworn testimony, it was denied by the father. The tapes were inaudible, and what came in were the transcripts, which weren't sworn and which objections were made to as the foundation. The trial judge insisted that the transcripts come in. Counsel requested the adjudication records of Chris Lemon. The state to this day has not said what the adjudication records were. This case is on all fours with Davis v. Alaska. So you're suggesting, then, that there isn't any evidence that Lemon had a prior juvenile adjudication? I'm suggesting that there is evidence. Now, just a minute. Answer my question. Is there any evidence in this record that Lemon had a prior juvenile adjudication? Yes, there is. He said that he was on home detention. His testimony? That's right. His testimony was that he was on home detention and that he had restrictions placed on him by a court. So, yes, there is evidence in the record to that effect. Is that the best we have? Yes. No. I think also the best that we have, Your Honor, is that he says, when asked directly, Mr. Lemon, when asked directly upon this, says, no, I don't know. I don't know. And the state, the state is relying upon that statement to say that there is no juvenile adjudication. We are saying there was an adjudication because he has admitted that restrictions were placed upon him. So restrictions can be placed upon a defendant pending trial through his probation or through parole without there being a conviction. Adjudication is equal to conviction in Arizona, right? There's also an obligation by the government to set forth and disclose adjudications. There's also an obligation. But adjudication is a determination in the juvenile court, isn't it? It is, Your Honor. So if he says I was under home detention for two weeks, say, pending a hearing of some sort, that's not an adjudication, is it? I don't think that he added that qualifier on there. Right. So you're just saying circumstantial evidence of an adjudication is the fact that he had two weeks in home detention. Yes, Your Honor. In addition to that, there's also the fact that Morris and Lemon were involved in the burglaries, and we were not told about the leniency that those two would get. This case is similar to the Wood v. Urkel case of the Second Circuit, where you had two people who primarily formed the testimony that leads to the conviction. So had we had this information, we would have been able to properly place it before the jury. In this case, it's like Davis. But I seem to remember that in Davis, the witness had a motive to cooperate with the prosecution because he was under a proceeding where he would be punished more heavily if he didn't cooperate. Even more so. But here you just want to put it in the adjudication to impeach the character of the witness as if it were a prior felony, right? That is not our position, Your Honor. Our position is that there was also this motive to remove a sword that was hanging over his head. Or you think that that two-week detention was a sword hanging over his head, although he was over 18? No, I'm saying that the fact that he was involved in burglaries. Oh, that's something else. Now, when I'm talking about the juvenile adjudication, you agree the juvenile adjudication could not affect witness Lemon because he was no longer a juvenile at the time of trial. I do not agree with that. In Arizona, a juvenile can't be tried as an adult as soon as they become 18. Yeah, but an adult can't be tried as a juvenile. That's correct. That's right. So he was an adult so that whatever the juvenile proceeding was that had been pending at one time and had resulted in a two-week detention order was not hanging over his head for purposes of creating a motive for him to testify. Correct? No, but the adjudication could have been used against him. As impeachment, similar to that of a felony conviction. That's correct. Which would require you to prove that there was an adjudication. That's correct. Where is the evidence that there was an adjudication? We can't prove something that the State hides from us. How? Why not? Can't you? Isn't it a public record? It is a public record. No, it's not a juvenile. I'm sorry. It is not a public record. Yeah. It is a record held by the public, but it's not a public record. It is a juvenile record. Did you ever make a motion to produce the record? Requests were made to produce the juvenile record. Some records were produced. It was unintelligible, and that's where we were left with this. They did not they would not come forward with what all this was about. And there's another Ninth Circuit case that's directly on point, the Kamich v. Risley case. In that case, it said you've got to produce these types of records. Now, the many documents in the file that support that adjudication, that may not be discoverable, but the ability of a defendant to be able to use this must be forthcoming by the State. And was the insufficiency of the production by the prosecution regarding Lemon's records pressed with the trial court? Absolutely. And it was pressed with the trial court, and it was also pressed with the Arizona Supreme Court. And the Arizona Supreme Court said, well, the facts of the adjudication are not exactly clear from the record. If the Supreme Court of Arizona cannot figure this out, it is a problem. Did you exhaust this, I assume, as part of your Brady claims? Did you exhaust this? The answer is yes. And this is what also makes this a little bit different than the Running Eagle case, is because there is a diligent effort to obtain this information. And the Brady obligation in this particular case is even more applicable to the State, because the State is the one that controls the information. It is not a third party. Just on Morris and Lemon, theoretically they could have also been prosecuted for felony murder, right? Were they both participants in both of the murders? I believe they could, yes. And instead, what, they were able to plea to a burglary charge? Well, there was also burglary in addition to the murders. Okay. So there was that aspect they could have gotten favorable treatment on. There was aspects regarding the burglaries in connection with the Mertens and McClain. So they were not ever prosecuted for any homicide type? That's my understanding, Your Honor. Okay. So at the time when they testified, were they rigorously cross-examined on their participation in this burglary ring? I believe that the judge said regarding the adjudication that you could not go into the adjudication. But regarding the burglary ring, I think that they were cross-examined on that. But regarding the adjudication, they were prohibited from getting into the adjudication. Well, because the judge said there wasn't one. The judge said not only was there not one, but in light of the dual jury situation, he did not want things coming out. So I believe that was also the other reason was that he wanted to also take a tight rein on the questioning of witnesses by the lawyers. And he admonished the lawyers. They had better be very careful and better not violate any rules. So there was a limit on the cross-examination. So that was another problem that came up as a result of the dual jury. However, you would really have to admit that the court rejected any Brady implication here, did they not? In fact, I read, I reject petitioner's argument that the state's actions implicate Brady v. Maryland. That's from the petitioner's supplemental brief at 8. At no point has petitioner offered to any reviewing court evidence that Lemon actually did have a humanoid adjudication and that the staff kept it from the petitioner. That assumes, Your Honor, that there is no adjudication. So perhaps today you will hear from the state that there was no adjudication. And I suppose if the state makes that representation, to Your Honor, I suppose that that would put them on firmer footing as to that. But right now they have not come forth with the adjudications that we believe must be disclosed pursuant to Brady v. Maryland. And I, I'll move on. The next thing is that with regard to the dual juries, the questions about Mr. Hedlund were quite extraordinary. After the prosecutor gets done cross-examining Morris. Are we now on the dual jury issue? Yes, Your Honor. Can you point to a point in the record where you raised that issue to the Arizona State Court? It was raised, Your Honor, through a special action. Wasn't it aside from the courtroom layout issue? Did you ever mention any other part of the dual jury issues? Your Honor, this came up as a special action. I understand how it came up. I just read the record. My record is that the only issue that you raised at all was the courtroom layout issue. I can't find anything else in the record that you said to the Arizona State Courts. And, Your Honor, this would allow, the Martinez case would come into play on this. The PCR counsel did not raise this issue. And as a result of Martinez, these types of errors would not be barred. Okay. So I appreciate your argument. If we determine that you failed to exhaust, isn't it procedurally barred then? No, Your Honor. It's not procedurally barred under Martinez. And one of the things that we were raising at the district court level to Judge Campbell. Well, did the petitioner waive the claim under Rule 32.2? No, because it would be excused under Martinez by ineffective assistance of counsel. All right. I just want to make sure what you're arguing here so I can effectively evaluate it. I don't agree with you about Martinez, but that's fine. And we asked, we told the court that because of the structure in Arizona of having the situation where you can't raise ineffective counsel on direct appeal, that we should be able to raise that as an error in the PCR. If we determine that the petitioner properly exhausted, is there really a case that clearly establishes federal law on this issue that you want me to look at? Yes, Your Honor. I would point to a couple of cases. The first one is Maxwell v. Shepard. Okay. And Estes v. Texas. And also, I know that the Ninth Circuit law, and I will talk about the Ninth Circuit law. There is a Ninth Circuit case, and it may be running eagle, that holds that the Zafiro is not applicable because it is an evaluation of a federal statute. However, it... Maxwell v. Shepard had to do with Dr. Shepard's trial in Cleveland, Ohio. It has to. Judicial publicity during the trial. It has to do with...   It has to do with Justice Alesta's prosecution that had to also do with pretrial and trial publicity. It has to do with this. What does that have to do with this case? It has to do with a fair trial, that under the Sixth Amendment, Mr. McKinney is entitled to a fair trial. And in Zafiro, actually, the opportunity... Frankly, what you're arguing, counsel, is that the general fair trial concept applies here, though the Supreme Court has never really addressed this issue? That's what I understand your argument is. Yes, Your Honor. And in terms of that, there is another reason why the Court can't. If the Court finds that there is a very similar matter, but not on all fours, it can use that Supreme Court case. In this case, Zafiro relied upon habeas cases to hold for the right to severance, and in certain cases there may be a severance. I'd like to move now to the Eddings issue. In this particular case, there was a nexus requirement as set forth by the Court. When the... from considering any mitigation evidence, correct? No, I would not conclude that at all, because the law in Arizona is that the sentencing judge may not consider mitigation unless there is a nexus to the crime that is charged. That is the law of the Supreme Court of Arizona. Is there any clear statement that certain evidence was excluded as a matter of law in this record? Yes, Your Honor, there was. What's your clearest? The clearest is in the Arizona Supreme Court opinion where, and I will read it verbatim. The record clearly shows that the judge considered McKinney's abusive childhood and its impact on his behavior and ability to conform his conduct and found it insufficiently mitigating to call for leniency. On this record, there was no error. So it's saying and linking the ability to conform his conduct. In addition, it cites State v. Ross, and in State v. Ross, that case holds that mitigation evidence may not be considered unless it is linked. And State v. Ross depends on a case of State v. Wallace, which says if this were the fact, anybody could bring in mitigation evidence, and we know that is what the law is. So the Supreme Court of Arizona is entitled to no deference at all because it applied the wrong standard that was in effect at the time. Okay, I understand your argument. I got that from your brief. Thank you. One of the questions that was asked of the panel before was? Has the Arizona Supreme Court changed that nexus requirement, or is that still? Are we going to be seeing it in every case? No, and that's what I want to tell the Court. This is not a slippery slope that the Court is going to be going down, is that as time goes on, you will hear this argument less and less because the Supreme Court of Arizona corrected its error. When did it change the law? It actually changed it in Calgary. Okay. It changed it in Calgary, which is six months later, six weeks later. I'm sorry. Towrie. Towrie. And Towrie, in Towrie, the Arizona Supreme Court uses the Eddings, Lockett, Penry line of cases in making its decision. In the Supreme Court, the Arizona Supreme Court case of Towrie, they do an excellent job of applying the correct test. But if you compare the state court case of Towrie versus the state court case of McKinney, they use totally different standards. So they got it right in Towrie, which also was upheld by this Court as being a constitutionally permissible sentence. However, the facts of this case are significantly different because there was an erroneous application of the law to the facts in this case. So when did Penry's the latest in the trio of decisions? Well, Penry's the latest one after it was Lockett, Eddings, Penry, I think Texas. And then after that, I believe, came the Abdul Kabir line of cases. And in Abdul Kabir, the United States Supreme Court said this has always been the law. This is not new law that we're applying. It's been the law since Lockett. Okay. And when in that series did the Supreme Court of Arizona finally start following the law of the United States? I would say in 1990, in late 1996, they followed it. And then they went back to not following it. So the state court case of Towrie used the correct standard. Then they went back to not using the correct standard. And I believe the case of Lopez v. Ryan of this court does an excellent job of showing the three different standards that the Arizona Supreme Court has used, and sometimes getting it right according to the United States Supreme Court law, and oftentimes getting it wrong or inconsistent with the United States Supreme Court law. In the recent case of Stokely, there is another example where the Arizona Supreme Court applied the correct test of Eddings, Lockett, Henry. And they go through a very detailed discussion of the non-statutory mitigating language, the childhood, the education. So Stokely is not inconsistent with what we are requesting relief on, because the Arizona Supreme Court in that particular case did apply the correct standard. With regard to the issue of mitigation, I'm sorry, the issue of Martinez, both the district court and the state of Arizona, in their brief, made numerous findings regarding PCR counsel and what PCR counsel did not do. It stated, Judge Campbell states that in his order, PCR counsel did not actually identify any issue appellate counsel failed to state. Judge Campbell stated, PCR petition cited no provisions to the Constitution. Regarding the issue of severance, which is a very important issue for us on the dual jury, he stated it was raised by PCR counsel but not raised by the direct appeal. Thank you. You're really talking about the ineffective assistance of appellate counsel claims? Appellate counsel claims, Your Honor, and also in this particular case with regard to the PCR counsel. One of the things that PCR counsel never raised was the cumulative error. And that is very important to us because of the dual jury. In Judge Sheldon's desire to have a dual jury, it created tremendous amounts of problems regarding the questioning, the limitation of cross-examination, and one of the questions that came up was shackling. And even to the extent that there was a reasonable basis for the shackling, it wasn't done in a way that it was not visible to the jurors. So once again, the way that the dual jury was handled also created the cumulative error on that. So you want to use Martinez and combine with the findings of the ineffective assistance of counsel, PCR and appellate counsel, to get to excuse the failure to exhaust so many of these issues, and then what? And then, Your Honor, we would ask that this matter be remanded. Mr. McKinney did not receive a fair trial. Mr. McKinney did not receive a fair sentencing. We would request that this matter be remanded back to the district court because a district court is the appropriate – there's a case law that says a district court is the appropriate body to fashion habeas relief. And then we would have the ability to develop our record with the district court. I can understand your argument now about PCR counsel from Martinez. I understand the argument. I guess I'm trying to figure out how you work a Martinez into the ineffective assistance of appellate counsel. That doesn't even apply to Martinez. In Arizona, I think you get – I mean, Martinez didn't deal with appellate counsel at all. Well, what happens, Your Honor, is that when it goes back to our – Are we just to make – are we just to take Martinez and enlarge it here? Is that what you're suggesting? No, Your Honor. Your Honor, what is happening is that when it went back to a Rule 32, the Rule 32 judge says, well, you didn't raise it on appeal, you didn't raise it on appeal, you didn't raise it on appeal. So the Rule 32 petition becomes a nullity. And then as a result of Martinez, all those now become live actions. So Martinez – Well, it doesn't – I didn't find anything in Martinez that deals about ineffective assistance of appellate counsel. If Martinez is an exception at all, it doesn't deal with appellate counsel. I'll sum up. I see my time is about over. It doesn't, Your Honor, in the terms of the relief that is afforded. Martinez does not say that you have a right to effective appellate counsel. However, there is a right to effective – six-amendment right to effective appellate counsel. In Arizona, since you can't raise that on your direct appeal, you need to raise it in your petition for a PCR, Rule 32. Judge Sheldon shut down those avenues by saying you couldn't raise it in a Rule 32. Judge Campbell shut down that avenue. Judge Sheldon was also the PCR judge, right? The trial judge. And the PCR. Wasn't he the PCR judge, too? I didn't make any mistakes. Yeah. Yeah. I see my time is almost up. I will stop here. Reserve. I'll address the Martinez issue first. First, Martinez doesn't apply here for two reasons. One, the district court decided, alternatively decided, the claims and the merits. Whereas the merits determination, you don't have to worry about procedural default. Martinez only gives cause for a procedural default, excuse me, procedural default. Secondly, Martinez itself explicitly called itself a narrow decision and limits this to claims that were presented of ineffective assistance of trial counsel. I believe that's Martinez 132, Supreme Court at 120. Isn't it also ineffective assistance of PCR counsel? There's no... Well, it's state PCR counsel. Well, that's the cause. That's the cause. It's not an underlying constitutional claim. Martinez doesn't change that law. There's still no underlying constitutional claim for ineffective assistance of PCR counsel. It's only cause to excuse procedural default. And all the claims we've talked about here were decided on the merits. If there's no more questions on that, I'd like... By Judge Campbell? Decided on the merits by Judge Campbell and Judge Sheldon? Judge Campbell decided it on the merits and Judge... It wasn't presented to the Arizona Supreme Court, as has been pointed out, and that's the procedural default. Getting to the Eddings issue, there has never been a rule in Arizona saying that the Arizona Supreme Court is not going to follow Eddings. I mean, I don't know how often this is repeated, but Arizona in Shad, this Court said that there was no general rule in Arizona. We just look at a... We presume that the Arizona judges are competent judges, that they know and follow the law. And there's been several decisions after Shad that are looking... And you look precisely at what the Court said. And there's only two cases, I think, that have gone the other way. Stiers is one. And Stiers was remanded to the Arizona Supreme Court, and the Arizona Supreme Court protested, yes, we did consider, but then they reweighed it. But the current cases, Stokely, I mean, the most recent cases, have all looked at the record, and they said, we presume that the Arizona courts did the right thing, looking at what the... There is no indication that they applied an unconstitutional rule to bar consideration of mitigating evidence. And I think in this case, Judge Sheldon went out of his way to consider and discuss the evidence regarding false defendants. Kennedy. Counsel, I have trouble with some of the reasoning there, because it says your position is that they consider the mitigating evidence, but if it doesn't have a nexus to the conduct of the defendant, it is not weighty enough to overcome the aggravating circumstance. Right, and that's okay even under headings. My problem with that is, is it given any weight at all? How do we know that it's considered at all? Maybe it's just a verbal formulation of saying, we can't, under headings, say that we won't consider it as a matter of law. But we'll adopt this verbal formulation that we do consider it, but it has no weight. What's the difference? Well, sometimes they say no weight, sometimes they say little weight. I mean, sometimes they reject the mitigating circumstance because they find that it's contrary to the evidence. That can be totally rejected. But giving it no weight is certainly within the parameters of headings, to give it no weight, little weight. Or sometimes the court says, we find that, as it was in this case, the evidence was not sufficiently substantial to call for leniency. In other words, it's not weighty enough to overcome the aggravation. So you have to look at this. Give me an example where an abusive childhood, such as McKinney suffered, would have weight as mitigation. Well, it always has. I mean, it has its mitigation. It has to be considered. It always has not sufficient weight. That's not true. Well, that's not true because there's a case in Arizona called Becharski where the defendant had a very bad, she was sold as a sex slave to a trucker. Becharski, B-O-C-H-A-R-S-K-I. I don't have the citation, but I just remember it. Take it again. B-O-C-H-A-R-S-K-I. In that case, the defendant was sold as a sex slave to a trucker, and the Arizona Supreme Court said, well, that's horrible, and they reduced her to life. In fact, there have been several cases where the Arizona Supreme Court has reduced a death penalty to life based on a bad childhood. But did they find a nexus or not find a nexus? Well, they found that it was sufficiently substantial to call for leniency. And I think part of the problem with Arizona law that's confusing to everyone is that Arizona has statutory mitigators. G-1 statutory mitigator is that the defendant's conduct was substantially impaired. That's an example. And by whatever the mitigation is. So if it's not substantial impairment at the time of the crime, then it's not, it doesn't fit within the mitigating factor. But it's very clear that the Arizona courts recognize that even if it doesn't fall within the mitigating factors, that it has to be then considered as non-statutory mitigation. And that's what the Arizona courts do. Following up on Judge Wardlaw's question, in this Petrosky case, did the court make a determination? I'm sorry, which case are you on?  Petrosky. Oh, Petrosky, yes. Did the court make a determination whether the selling into slavery affected the conduct of the defendant as to the commission of the crime? I should have read Petrosky. I just thought of it off the top of my head. But I think they just found that it was, even though, I'm trying to remember who it was. Petrosky killed a woman, I believe during a burglary, so there wasn't a lot of evidence that would relate to bad shot, like PTSD or something. So I don't believe there was any causal connection. They just thought that it was sufficiently substantial to warrant leniency. And that's what juries do now. Juries, we don't have the advantage of special verdicts now. We don't know what juries do. But juries are given evidence and they consider it. And as long as they're not barred from considering it, then there's no violation of Eddings. And I think Eddings is a clearly established authority, not Tanar, because Tanar is later in the plastic case. Do you have a case where mitigation evidence in Arizona that was not found to constitute evidence of a substantial impairment with respect to the commission of the crime was weighed and did result in a lower sentence? I don't know. I can't. I don't have a case. But I do have the case of Gallegos. It was one of my cases where there was evidence of intoxication and drug use, and it was considered under G-1, but the Arizona Supreme Court said, wait a minute, you don't have to just consider it under G-1. You have to go back and you have to consider it as non-statutory mitigation. It went back to the trial judge, and the trial judge considered that, which is it was considered as non-statutory mitigation. So, well, you know, I still find that it's not sufficiently substantial to call for amnesty. So I can't think of any other cases right off where there's that kind of dichotomy. But I know that that's true, that the Arizona courts realize that they can't just look at the statutory mitigators. They have to follow Eddings and look at all the mitigation and consider it. So they've considered non-statutory mitigation that does not affect the conduct of the commission of the crime. Sure. And reduced a penalty based on that? Sure. I think, you know, I'm kind of speaking about cases that I haven't read for a while, but I think that's true in Bacharski that they reduced it to life based on just having a bad childhood period. I want to go back to how you characterized Stokely. And I just maybe Judge Bea can help out on this, too. But as I understand our amended Stokely opinion, it didn't – the amended one said that assuming Eddings' error occurred, there was no prejudice. It didn't say that there was no Eddings' error. The amended one. Perhaps Judge Bea can shortcut, because I think he knows what's in it. What it says, and I just have the slip opinion. I don't have the Westall. Do you have the amended one? Yeah. This is the amended opinion of order of November 21st. And it says, on balance, the Arizona Supreme Court opinion suggests that the Court did weigh and consider all the evidence presented in mitigation at sentencing and citing particular factors. And it goes on to find no actual prejudice. So it – the Arizona Supreme Court, this is page 5, carefully discussed all the statutory and non-statutory mitigating factors step by step in the separate paragraphs of the opinion. So they do – and then on page 6, the Arizona Supreme Court reviewed and discussed each of the aggravating and mitigating factors individually. Page 7, the Arizona courts considered the mitigation evidence, including good behavior in jail and childhood circumstances, insufficient to warrant leniency. So there's a case where they're finding that childhood is insufficient to warrant leniency. So I hope that answers your question. Not really, but I'll go back and take a look at it. I mean, yeah, it says what it says. Yeah. I can't change it. But the – I don't – yeah, I'm not going to get into the specular thing too much. Regarding – I guess we've got two issues left, and I'll address them. The Joe Lemon issue, obviously the prosecution did disclose records, and then the defense attorney said, we don't know what these records mean. We want to examine him and make a record on this. Let me ask you, in Arizona, Mr. Anderson, if there is a juvenile adjudication, is there a document that says juvenile adjudication and what it is, like an order? I'm unfortunately not an expert in juvenile law, but it is like a conviction. There's some core record of an adjudication. But it's sealed from the public because – Yes, General, and Dave has kind of discussed the reasons that we seal juvenile records. But in this case, some sort of records were disclosed. The defense didn't – they just said, we can't figure these out, so they asked the voir dire Lemon. And Lemon says, now, this is the same aggravated assault charge that Chris Morris was adjudicated on. So the argument that there's some grand conspiracy that the State's witness is not being impeached isn't true because the State readily conceded way before trial that Chris Morris had an adjudication. Can you explain to me, Mr. Anderson, why when Lemon was to be examined on voir dire as to his record, defense counsel absented himself from the courtroom and the court went ahead anyway? That was Hedlund's attorney, so that's Hedlund's issue. But I'm happy to address it if the Court wants to consider it. Yeah. I think the Court saw it as an offer of proof, and the Court thought that, well, you know, it's the same no matter which – So McKinney's attorney was still there. Yes. McKinney's attorney was there. So it's not – the denial of counsel is not McKinney's issue. It's Hedlund's issue.    Thank you very much. Hedlund didn't argue. But if you look at Lemon's – when Lemon was examined by Mr. Allen, who was McKinney's attorney, he says on – I'm sorry, I don't have a – this is page 78 of the transcript of 1028. I'm not sure which ER that was, but I'm sure it's in the record. I was found not guilty of the aggravated assault. So there can't be any adjudication because he was found not guilty. And – Well, then why did he spend two weeks in home detention? That's not explained. It's not – it's not clear what that is. I mean, that was just never hashed out. But Hedlund's attorney conceded – if you look at the Arizona Supreme Court opinion, which I think you have to give some credence to, it says, Hedlund – and this goes for McKinney as well because he raised the same claim – Hedlund has never proffered any evidence to show that Lemon had any juvenile adjudication, let alone one which could have been used for his impeachment. Indeed, as late as oral arguments in this Court, Hedlund's counsel possessed no evidence that Lemon had been adjudicated as a juvenile. And in all the Rule 32 proceedings and all the habeas proceedings, there's never been any evidence of an adjudication. And this is similar to Running Eagle in the respect that there's, you know, there's this allegation, a negative allegation that there's something out there that wasn't disclosed. But habeas claims can't rely on speculation, as this Court held in Running Eagle and the U.S. Supreme Court held in Wood v. Bartholomew. Furthermore, he wasn't on – Lemon testified that he wasn't on probation, and he couldn't be on probation outside of the Arizona statutes. And it's similar to the case I cited with In re Amber S, which is in the pleading, so I won't give the citation. But if you look at the statutes, it's very similar to the criminal statutes. I mean, you can't be put on probation for nothing. You have to be adjudicated before you're put on probation. So he couldn't have been on probation when these matters occurred. And, indeed, he was 18, so he couldn't – he wasn't on probation at the time of trial. So if you look at what Davis talks about, there's no impeachment here. And I would point to the Kamich decision, which I thought I had here. But the Kamich decision specifies what the purpose of – yeah, here it is. And it says it's not just to run somebody's character through the ring, or to say, well, they had these juvenile adjudications, they must be bad. You have to have these things that are set forth in Davis. And Davis talks about something like being on probation that would affect your decision to do something, or how you interact with the authorities, or how you shape your testimony. And I would also want to point out that Lemon was impeached in other ways. For instance, once again, this is the transcript of 1028, which I don't – oh, yes, I do have a citation on that. I see McKinney has designated his ERs with the prefix J-E-M, which I just cited in my brief as ER0585. And at that citation, McKinney's attorney, Joe, you're getting some benefit today for testifying, correct? Answer, benefit. Question, yeah, the state's not charging you with any involvement in the Arrowhead burglary, correct? Answer, no. So he was impeached with a possible source of bias, i.e. that he wasn't charged in the Arrowhead burglary, but that was specifically brought out by counsel. So he was fairly cross-examined, and the fact that he wasn't cross-examined about an adjudication that's never been shown to exist isn't a violation of Davis, a reasonable application of Davis. If the Court doesn't have any questions, I'll proceed to the dual jury issue. So this Court, in Lambright v. Stewart, the en banc panel overruled the three-judge panel, which had said that that was a violation, and they said that the dual juries in that case, which was quite a while ago, were not, per se, a constitutional violation, that you could do that. Now, the only dissent was by Judge Reinhart, and his problem with it was, this is a novel procedure. We shouldn't be doing this in capital cases. But in this case, we've already had quite a bit of case law from many states talking about that it's workable, and then you actually had the special action that has been referred to. So Judge Sheldon made an extensive order setting forth what he was going to do. He was going to have separate juries for certain evidence and for oral arguments and opening statements and closing arguments. So he said exactly what he was going to do. And then it went to the Arizona Supreme Court, and the Arizona Supreme Court said, yeah, this is all right. So it wasn't something that the judge just did willy-nilly. He thought about it quite extensively, and as I say, the Arizona Supreme Court approved it. And so I think that was reasonable. And this Court, as has come up, has ruled in Running Eagle and in Collins v. Runoff that there's no constitutional right to severance. There's actually, the Supreme Court has said, there's a preference for a joint jury of defendants. So there's no constitutional violation there. And the dual jury is kind of a partial severance. I mean, it has the advantages of the evidence against defendant is only considered by that defendant's jury. So it's kind of a partial severance. So if the severance in the Constitution are required, it makes sense that there's no bar on dual juries. And the fact that the juries were able to consider each defendant individually is shown by the fact that they found Hedlund guilty of second-degree murder with regard to Merton. So the jurors were able to figure out who was who. Now, the evidence that was only adduced, there were a couple of cases. McKinney's confession to his father, that was only heard by McKinney's jury, and obviously strong evidence that he actually committed the crime. The police officer testifying about what the father told him, that only came forth in front of McKinney's jury. Some of Chris Morris' statements about what Hedlund said, McKinney did, were only presented to the Hedlund jury. So the judge did try to ensure that only the relevant evidence that applied to certain defendants went to their jury. And that was an attempt to, well, I mean, it was to comply with Bruton. I think it did that successfully. Okay. Well, I think I'm about out of gas. Let's see if the Court has any more questions. Well, one second. So are your arguments with respect to Shackling, with respect to McKinney, the same as with respect to Hedlund? Well, even more so. Well, the reason I'm asking is because the two certified issues here are the dual juries and the Shackling, and you haven't mentioned the Shackling. Yeah, well, the same reasons, even more so with regard to McKinney, as the Court has pointed out, that McKinney had this other escaped attempt in 1991. So there's even more justification for Shackling on Mr. McKinney. Thank you. Thank you. Judge Bay and Judge Nelson both asked the question of, is there any other Supreme Court cases that would support the dual jury? And there is, and that is Bruton. And I cited that in my brief. During the trial, after the prosecutor would question Mr. Morris, Mr. Meander would then follow up with questions like, Mike did not ask for anything. No. Mike didn't want anything. No. Mike just drove away during the burglary. Mike was scared to do the burglary, wasn't he, Chris? So he's drawing in these statements that we cannot cross-examine Mr. Headland on, and at the same time making my client the bad guy. So this is also the dual problem with the dual jury, is that there's a Bruton problem, and then on top of that, evidence is coming in against my client that would not have come in had he had a separate trial. With regard to the dual jury, there's a Bruton problem. Why wouldn't those questions be admissible in a separate trial? Why wouldn't they? No. What happened, Mr. Headland, statements made by Mr. Headland would not come in at my trial. They would be precluded under Bruton. So those wouldn't come in. In this particular trial, they came in to help Mr. Headland. That would not have come in. Headland didn't testify. That's correct. The statement was made by Mr. Morris. Mr. Morris is testifying. But he didn't say what Headland had said about McKinney. He's making statements trying to make Mr. Headland's complicity less or non-existent and trying to make it more likely. Because they're pointing fingers at each other, right? They're pointing fingers at each other, but we can't question him about the pointing of fingers because it's based upon what Mr. Headland says. No. It's what Mr. Headland did. Mike did this. He didn't ask for anything. I can't sit there and cross-examine Mr. Headland and say, Mr. Headland, this is not true, is it? So I'm precluded from doing that. Asking about Mr. Headland again. The question is, he didn't want to go into any houses? No. I can't question Mr. Headland about that statement. But it's coming in at my trial. Why should it come in at my trial? He didn't want to hurt anyone. He didn't want to confront anyone. All these questions are coming in, and they're prejudicial to my client given the facts that have happened. This is the problem with this dual jury, and we're not saying that dual juries are precluded in any case. We're saying that in this particular case, in this complicated case involving two murders, two separate murders, this procedure should not have been used. In fact, the prosecutor started out by saying that they don't want to go along with this idea, but to curry favor with the judge, they then changed their mind. Mike didn't want to do more burglaries? No. I don't get the question about that. With regard to the Eddings matter, Judge Nelson, you asked a question in the other proceeding about the language that would support a relief under Eddings or Penryn. This court has cited those cases, and it cited them in Stiers. It has cited them in the Wallace case, which we cited. So those cases have extracted the language that would support us getting relief in this case, and Wallace did give relief, and Stiers did give relief. So is this case more like Stiers or more like Stokely? It's more like Stiers because in Stokely, the Arizona Supreme Court actually did what it was supposed to do. In this particular case, the Arizona Supreme Court applied the wrong test. It was just a mistake, but what resulted was an unconstitutional sentence. My client is entitled to relief. I have no further questions. Thank you. All right. Thank you, sir. Thank you. We appreciate the argument on both sides today.
judges: Wardlaw, Bea, Smith